**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH**

| | | |
|---|---|---|
| KEVIN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 23-cv-0208 |
| | ) | |
| v. | ) | |
| | ) | United States Magistrate Judge |
| JOHN WETZEL, ROBERT | ) | Cynthia Reed Eddy |
| HAMMOND, E. ARMEL, S. | ) | |
| ERICKSON, and JOHN DOES 1 and 2, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION[1]**

**CYNTHIA REED EDDY, United States Magistrate Judge**

Defendants John Wetzel, Robert Hammond, Eric Armel, and Seth Erickson (collectively, the "DOC Defendants") have moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(6). (ECF No. 22). For the reasons that follow, the motion will be granted in part and denied in part.

**I.      Procedural History**

Plaintiff, Kevin Davis, a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") incarcerated at SCI-Fayette, initiated this pro se civil rights action on February 9, 2023 by submitting a Complaint for Violation of Civil Rights (Prisoner Complaint). (ECF No. 1). The Complaint was lodged as it did not come with a Motion for Leave to proceed in

---

[1]      In accordance with the provisions of 29 U.S.C. § 636(c)(1), all served parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 2 and 16. The only parties who have not been served are two unidentified John Doe defendants. While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified.

forma pauperis ("IFP Motion") or the filing fee.  On March 1, 2023, the filing fee was paid in full (ECF No. 5) and the Complaint was formally filed on March 9, 2023. (ECF No. 6).

The DOC Defendants waived service (ECF No. 11) and moved to dismiss the Complaint. (ECF No. 12).  In response, Davis filed an Amended Complaint (ECF No. 20), which remains his operative pleading.

Davis brings his claims pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments, and 42 U.S.C. § 1985(3). As relief, Davis seeks "compensatory, exemplary, and consequential damages" against each of the Defendants, jointly and severally, as well as injunctive relief requesting that the Court order his return to his home region, as well as making him eligible for programs aimed toward parole release, such as vocational and job readiness training. Amended Complaint, Prayer for Relief (ECF No. 20 at p. 17).

Defendants are officials and employees of the PA DOC:  John Wetzel, former Secretary of the DOC;   Robert Hammond, Treatment Program Manager for the DOC; E. Armel, former Superintendent of SCI-Fayette; S. Erickson, Unit Manager at SCI-Fayette; and two DOC John Doe Defendants.  All defendants are named only in their individual capacities.

The named DOC Defendants have moved to dismiss the Amended Complaint (ECF No. 22) and Davis has filed a response in opposition. (ECF Nos. 25, 26).  The matter is now ripe for resolution.

## II.    Jurisdiction

The Court has federal jurisdiction over the Amended Complaint as it asserts claims under 42 U.S.C. §§ 1983 and 1985(3).  Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to this action occurred in Fayette County, which is within the territorial boundaries of the

United States District Court for the Western District of Pennsylvania, 28 U.S.C. § 118(c), and all Defendants are residents of the Commonwealth of Pennsylvania.

## III.     Factual Background[2]

In general, the factual allegations of the Amended Complaint fall into three categories:  (i) the DOC's juvenile lifer transfer "policy/practice/procedure"; (ii) coal ash contamination at SCI-Fayette; and (3) retaliatory actions taken by the DOC Defendants.

### A.     The Juvenile Lifer Transfer Policy/Practice/Procedure

The crux of Davis's allegations is that the DOC has a policy/practice/procedure to transfer "juvenile lifers" to their home region after resentencing, that Davis, as a "juvenile lifer," should have been transferred to his home region under this policy/practice/procedure, and that despite being resentenced, DOC refuses to transfer him to his home region.  Davis contends there is no rational basis for the difference between the treatment he has received and the treatment received by other similarly situated juvenile lifers.  Davis also alleges the refusal to transfer him is in retaliation for engaging in protected activity.

In September 1977, Davis was found guilty of first degree murder and subsequently sentenced to mandatory life without the possibility of parole.  At the time of the offense, Davis was seventeen years old.  He has been incarcerated continuously since his arrest in 1977 and is considered a "juvenile lifer." After the rulings of the Supreme Court of the United States in *Miller*

---

[2]     The factual background is drawn from the allegations of the Amended Complaint, which this Court must accept as true when considering the instant motion to dismiss. The Court has taken judicial notice of Davis's pending lawsuit filed against members of the Pennsylvania Parole Board, Civ. Act. No. 2: 23-cv-0578, filed in this Court, and has incorporated some of the factual allegations from the Second Amended Complaint filed in that case.  (ECF No. 27). A court may take judicial notice under Fed. R. Evid. 201 of documents filed in other court proceedings because they are matters of public record. *Easley v. Reuberg*, 2021 WL 3639734, at *3, n.1 (W.D. Pa. 2021).

*v. Alabama* and *Montgomery v. Louisiana*, Davis was resentenced on April 16, 2018, to a term of 40 years to life. *See also* Am. Compl., ¶ 34.

According to the Amended Complaint, in 2012, after the Supreme Court decisions in *Miller* and *Montgomery*, "Mr. Wetzel and unknown staff instituted written/unwritten policies, practices, and procedures to help/assist juvenile lifers transition back to society." Am. Comp., ¶ 18. For example, juvenile lifers were assisted in obtaining Social Security cards, were provided counseling, were provided clothing and shelter, and halfway houses were prepared. *Id*. ¶¶ 19-20. Additionally, Wetzel "approved/implemented policies, practices, and procedures to make juvenile lifers eligible for programs aimed toward parole release, such as vocational and job readiness training." *Id*. ¶ 21.

Defendant Hammond, Treatment Program Manager Bureau of Treatment Services, and John Doe individuals met with and spoke via video conference to the juvenile lifers during the entire re-sentencing process. *Id*. ¶ 22. Defendant Armel participated in many of these meetings. He spoke regarding the "policies, practices and procedures approved and implemented by Mr. Wetzel, and he agreed with what Mr. Wetzel put in place for the juvenile lifers." *Id*. ¶¶ 23-24. Defendant Armel was present during a meeting when Davis asked Defendant Hammond to explain the "policies, practices and procedures" for juvenile lifers who had completed the programs. According to Davis, Defendant Hammond replied, "after you're re-sentenced, you'll be returned to your home region to continue rehabilitation/complete your transition for society." *Id*. ¶ 25.

Despite being resentenced in April 2018, Davis has not been returned to his home region. On August 8, 2022, Davis wrote DOC Secretary George Little, who had replaced Defendant Wetzel as Secretary, inquiring why he had not been returned to his home region like the other

4

juvenile lifers who were similarly situated had been.  *Id*. ¶ 40-44.[3]  W. Bowers, Staff Assistant at SCI-Fayette, responded to Davis's inquiry and suggested that Davis seek an "incentive-base transfer," which Davis contends was not in accordance with what had been conveyed to the juvenile lifers during the meetings conducted by Defendant Hammond.  *Id*. ¶¶ 51 – 52.

Davis then filed Grievance No. 997172, which included claims related to his return to his home region, the coal ash contamination at SCI-Fayette, and retaliation for engaging in protected activity. The next day, Defendant Erickson, Unit Manager, interviewed Davis and asked if Davis had a copy of the policy on returning juvenile lifers to their home regions after resentencing, to which Davis replied that he did not.  On October 12, 2022, Defendant Erickson denied Grievance No. 997172.  In denying Hammond's claim about not being returned to his home region, Defendant Erickson wrote, "There is no policy in place that moves a juvenile lifer to his home region after being resentenced."  *Id*. ¶ 63.  Davis's grievance was denied on appeal by Defendant Armel who also suggested that Davis seek an incentive-based transfer.  Davis contends that Defendant Armel knew an incentive-based transfer was not what Defendant Wetzel had approved and "implemented for the juvenile lifers."  *Id*.

B.    Coal Ash and Contaminated Water

Davis also contends that by not transferring him to his home region, he faces "imminent danger" from the "toxic coal ash that contaminates the SCI Fayette" and from the "water that is used to prepare the food at the SCI-Fayette, and that Plaintiff drinks."  Resp. at p. 19.  He contends "by virtue of his chronic illness (diabetes), he was in imminent danger/risk at the SCI-Fayette of

---

[3]    Plaintiff also stated that by remaining at SCI-Fayette he was "in imminent danger /risk . . . of having a heart attack/stroke due to the toxic coal ash that contaminates the institution."  Am. Compl., ¶ 44.  The allegations about the conditions of confinement are addressed in a separate section of this Memorandum Opinion.

having a heart attack/stroke due to the toxic coal ash that contaminates the institution. . . . ."  Am. Compl., ¶ 44.  In Grievance No. 997172 , Plaintiff addressed, among other things, Davis's concerns about being exposed to coal ash.  In denying the grievance, Defendant Erickson stated, "There is no known toxic chemical coming from the ground of SCI-Fayette, and SCI-Fayette's medical is fully equipped to deal with any diabetic situation."  *Id*. ¶ 64.

Davis contends that Defendant Erickson's grievance denial is contrary to the "policies, practices and customs for the officers at the SCI Fayette consume only bottle water and notices delivered to the employees at SCI Fayette of pollutants. . . ." *Id*.  Additionally, according to the Amended Complaint, Defendant Erickson had a copy of a news article posted on the bulletin board in his office relating to the risk/harm that the coal ash posed to residences and property in LaBelle, Luzerne Township, Fayette County.  *Id*.

In support of his coal ash and contaminated water-related claims, Davis refers *to Holly Rice, et al. v. First Energy Corp*., Case No. 2:17-cv-489 (W.D.Pa), a class action case filed in this Court in which private property owners and/or residents of private property in LaBelle, Luzerne Township, Fayette County, allege dust and coal combustion byproducts have migrated onto their properties resulting in personal injury and property damage.   Am. Compl., ¶ 64. He also refers to an investigation in which the Abolitionist Law Center requested the medical records of prisoners at SCI-Fayette to determine who "all suffered from the effects of the coal ash, its fugitive dust and the ground water." *Id.,* ¶¶ 72-73.  According to the Amended Complaint, "Mr. Armel and his agents, officers and employees refused to comply with the request . . . and the court ordered the SCI Fayette to pay the Abolitionist Law Center $118,458.00 for refusing to disclose the medical records of the inmates at the SCI Fayette who were exposed to the toxic coal ash and consumed

the water." *Id.   See Uniontown Newspapers, Inc. v. Pennsylvania Department of Corr.*, 243 A.3d

19 (Pa. 2020) (granting assessment of sanctions and attorneys' fees).

      C.    <u>Retaliation</u>[4]

      The last category of allegations involves Davis's claims that the DOC Defendants have

engaged in a "pattern of retaliation" that began in 2017, when he asked whether the "programs

approved and implemented by Mr. Wetzel" included medical treatment for Hepatitis C for the

juvenile lifers. Am. Compl., ¶ 27. When "Wetzel's staff at the SCI-Fayette responded negatively,"

Davis filed Grievance 664288. Am. Compl., ¶ 29. He filed later a federal lawsuit in this Court, 2:

17-cv-1293, which was transferred to the Middle District of Pennsylvania, Case No. 1:18-cv-

00804, relating to the lack of medical care for treatment of Hepatis C.  In response to the grievance

and lawsuit, Davis alleges a "pattern of retaliation ensued." Am. Compl., ¶ 67.  Specifically, Davis

contends that he has been denied participation in "Mr. Wetzel's approved/implemented" policies,

practices, and procedures "for the juvenile lifers transition back to society" in retaliation for

engaging in protected activity.  Am. Compl., ¶¶ 81 – 84.[5]

---

[4]     In the Amended Complaint, Davis refers to Grievances 664288,  717576, 732545, and
997112 but does not attach copies of these grievances.  *See* Am. Compl., ¶¶ 29,  33, 62, and n. 3.
The Court notes that the DOC Defendants attached copis of Grievance Nos. 717576 and 997172
to their brief in support of their original motion to dismiss (ECF Nos. 13-1, 13-2), but that motion
was denied as moot once the Amended Complaint was filed and, as a result, the Court has reviewed
no documents attached to that brief.  The DOC Defendants have now attached a copy of  Grievance
No. 732545 to their brief in support of the pending motion to dismiss. (ECF No. 23-1). On a motion
to dismiss, a district court may only consider an "undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document,"
*Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993), but
otherwise it should convert the motion to dismiss into a motion for summary judgment under
Federal Rule of Civil Procedure 12(d).  *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, n. 5 (3d Cir.
2023).  At this early juncture, it is unclear what grievances Davis's claims are based on.  Thus, in
an abundance of caution, the Court has not considered the attached exhibit as the Court did not
convert the motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 12(d).

[5]     Davis also alleges that his request for parole was denied by the Parole Board in retaliation
for his filing of Grievance No. 997172 and that he was told by an unidentified parole staff member

**IV.     Standard of Review**[6]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1983). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

_____

that any future requests would also be denied if he filed additional grievances. Am. Comp., ¶¶ 58 – 61.

[6]     Because Davis is proceeding pro se, his allegations, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Moreover, under the liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). Despite this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted).

Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). A court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based on those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss under Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

The United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - whether or not the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007). "However, we need not provide a plaintiff with leave to amend if amendment would be inequitable or futile." *Thompson v. Police Dep't of Philadelphia*, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011) "Where a claim is frivolous, amendment is necessarily futile and, thus, leave to amend is not warranted. A claim is frivolous when it lacks an arguable basis in either law or in fact." *Id*. (internal citation and quotation marks omitted).

## V.  Discussion

### A.  Claims Brought Under 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  The Supreme Court of the United States has held that section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To be afforded remedy in federal court, plaintiffs must prove two elements.  First, they must show a "violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Second, they must "show that the alleged deprivation was committed by a person acting under color of state law." *Id*. at 48.  The DOC Defendants do not dispute that at all times they were acting under color of state law.

10

Davis argues that the DOC Defendants violated his constitutional rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments. These arguments will be addressed in turn.

### 1. *Lack of Personal Involvement*

The DOC Defendants contend that Defendants Wetzel, Hammond, Armel, and Erickson should be dismissed for lack of personal involvement in any of the alleged violations. Davis, not surprisingly, responds that the factual allegations in the Amended Complaint are more than sufficient to withstand a *Twombly* challenge on all his claims.

There are "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The United States Court of Appeals for the Third Circuit explained these two general types of supervisory liability as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) ). "Failure to" claims— failure to train, failure to discipline, or, as in the case here, failure to supervise— are generally considered a subcategory of policy or practice liability.

*Barkes v. First Correctional Med., Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes,* 575 U.S. 822 (2015).

### a.   Juvenile Lifer Release Program

The DOC Defendants argue the factual allegations of the Amended Complaint do not establish personal involvement because DOC had no custom or practice regarding releasing

juvenile lifers after resentencing to their home regions.  Davis responds that Defendant Wetzel implemented a juvenile lifer transfer policy/practice/procedure and the DOC Defendants knew such a policy/practice/procedure existed.

The Amended Complaint does not contain broad and conclusory allegations against the DOC Defendants as a group, but rather it delineates individual conduct for each defendant.  For example, according to the Amended Complaint:

> \* Defendant Wetzel implemented a juvenile lifers transfer "policy/practice/procedure;"
>
> \* Defendant Hammond met with and conveyed to the juvenile lifers the "policy/practice/procedure" that Defendant Wetzel had implemented;
>
> \* Defendant Armel spoke at a number of meetings with the juvenile lifers regarding the "policy/practice/procedure" implemented by Defendant Wetzel; and
>
> \* Defendants Armel and Erickson both knew of the juvenile lifer transfer policy/program/procedure and yet both denied Davis's grievance stating no such policy existed.

The Court finds that for pleading purposes, Davis has adequately alleged a policy existed on which he basis his claims and that each of the DOC Defendants was personally involved in conduct that forms at least part of the basis for his claims.[7]  The Court finds that it is plausible that discovery will reveal that Defendant Wetzel implemented a "policy/program/procedure" to transfer juvenile lifers to their home regions after resentencing.  Because this is a fact-intensive inquiry, the question of whether there was such a "policy/program/procedure" will be developed during fact discovery and the DOC Defendants are free to raise any related arguments on summary judgment.

---

[7]     To the extent that the DOC Defendants argue that neither Defendant Hammond nor Defendant Armel were in a position to effectuate these transfers in conformity with this alleged policy, that argument should be fleshed out during discovery.

b.      Coal Ash Contamination

The DOC Defendants argue that Davis has not established that Wetzel, Armel, or Erickson were aware of or involved in the "coal ash situation."   Liberally construing the Amended Complaint and viewing its allegations in a light most favorable to Davis, the Court finds the facts alleged support inferences that reports received over an extended period notified Defendants Wetzel, Armel, and Erickson of an ongoing threat to the health and safety of Davis and other inmates at SCI-Fayette.   These facts, if ultimately proven, may be sufficient to support a finding of personal involvement on the part of these three Defendants.

c.      Denial of Grievance No. 997172

In 2022, Davis filed Grievance No. 997172 raising the same issues that are the basis of Davis's claims in this lawsuit:  a refusal to transfer him, the presence of coal ash, and retaliation. Defendant Erickson denied the grievance and Defendant Armel denied the grievance on appeal. The DOC Defendants argue that Defendants Erickson and Armel's involvement in the grievance process is not enough to establish personal liability.

Typically, a plaintiff grieving matters to supervisors and administrators is not enough to impose personal knowledge of the purported wrongdoing.  *See Rode* v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988).   In this case, however, Davis alleges ongoing constitutional violations that he made Defendants Erickson and Armel aware of through the filing of an administrative grievance.   Courts have explained that a plaintiff states a claim by alleging that supervisory defendants who reviewed a grievance in which the plaintiff alleges an ongoing violation is personally involved in that violation because they confront a situation that they can remedy.  *See Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D.Pa. Aug 7, 2012), *report and recommendation adopted by* 2012 WL 4370929 (W.D.Pa. Sept. 24, 2012).

13

In this case, because Davis alleges ongoing purported constitutional violations that Defendants Erickson and Armel were made aware of through his administrative grievance, the Court finds that the factual allegations of the Amended Complaint are sufficient to support the personal involvement of Defendants Erickson and Armel.

2. *First Amendment Retaliation Claim*

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for redress of grievances.

U.S. Const. amend. I.  It is well settled that "government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000)). In order to state a prima facie case of retaliation, a prisoner / plaintiff must demonstrate "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Williams v. Secy PA Dep't of Corr.*, 566 F. App'x 113, 117 (3d Cir. 2014) (quoting *Mitchell*, 318 F.3d at 530). Although there is not a heightened pleading standard in civil rights cases and liberal standards are to be applied to pro se pleadings, a § 1983 complaint must still comply with the Federal Rules of Civil Procedure, and must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant alleged to have harmed the plaintiff, so that a defendant has adequate notice to frame an answer. The requisite causal connection can be shown by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id*. (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

The DOC Defendants move to dismiss Davis's First Amendment retaliation claims arguing that Davis has not pled sufficient facts to give rise to a retaliation claim under the law. Davis responds that the allegations in the Amended Complaint show he has been treated differently than similarly situated juvenile lifers in retaliation for engaging in protected activities.

The DOC Defendants "concede that as a general proposition, the filing of grievances or lawsuits, would constitute protected conduct," Br. at p. 9, but argue that the allegations in the Amended Complaint related to a "pattern of retaliation" fail to state a claim.

The Court finds that the Amended Complaint sets forth sufficient facts to state plausible First Amendment retaliation claims against the DOC Defendants. While the Court views these retaliation claims with skepticism, at this early stage of the litigation, accepting the facts alleged in the Amended Complaint as true and construing them in the light most favorable to Davis, the Court finds that Davis has alleged enough to create plausible retaliation claims to be allowed to continue beyond the DOC Defendants' motion to dismiss. Although Davis's retaliation claims may ultimately not succeed on the merits, they are not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial." *Neitzke v. Williams*, 490 U.S. 325, 327 (1989).

     3. *Fourth Amendment Claim*

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  While the Amended Complaint states that Davis has brought a Fourth Amendment claim, there are no factual averments in the Amended Complaint addressing a Fourth Amendment claim.  The DOC Defendants ask that any Fourth Amendment claim be dismissed for failure to state a claim.   Br. at p. 15. (ECF No. 23).  Davis does not respond to this argument.

It is well-settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The Amended Complaint is void of any allegations which state a plausible claim under the Fourth Amendment.  Leave to amend will be denied as futile.

### 4. *Fifth Amendment Claim*

The Fifth Amendment to the U.S. Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. While the Amended Complaint states that Davis has brought a Fifth Amendment claim, there are no factual averments in the Amended Complaint addressing a Fifth Amendment claim.  The DOC Defendants ask that any Fifth Amendment claim be dismissed for failure to state a claim.   Br. at p. 15. (ECF No. 23).  Davis does not respond to this argument.

At best, it would appear that Davis is attempting to bring a due process claim under the Fifth Amendment.  But "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir.

1997)).  In other words, a due process claim under the Fifth Amendment *only* applies to federal officials.  *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)).  Here, the DOC Defendants are employed by the Commonwealth of Pennsylvania and, consequently, they are state actors or officials.  Because they are not federal actors, the Fifth Amendment's Due Process Clause is inapplicable to them.  Leave to amend will be denied as futile.

### 5. *Eighth Amendment Conditions of Confinement Claim*[8]

The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on prisoner's conditions of confinement.  *See Rhodes v. Chapman*, 452 U.S. 337 (1981); *Graham v. Connor*, 490 U.S. 386 (1989).  To state a viable conditions of confinement claim, a plaintiff must: (1) allege a deprivation that is "objectively, sufficiently serious"; and (2) show that the prisoner official "ha[s] a sufficiently capable state of mind." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834 (1994)).  Courts within this circuit have recognized that environmental or unsanitary prison conditions that pose a serious risk to the health of inmates may support such a claim.  *See Williams v. Pa Dep't of Corr.*, No. 2:20-cv-0794, 2023 WL 2655406, at *12 (W.D.Pa. Feb. 2, 2023) (prisoner's claim of exposure to coal ash and contaminated water supports a conditions of confinement claim and failure to protect claim); *Moore v. Rosa*, 2021 WL 1143376, at *5 (E.D. Pa. Mar. 25, 2021) ("unsanitary conditions can support a cognizable § 1983 conditions of confinement claim."); *Quinn v. Tritt*, 2021 WL 1621294, at *4 (M.D. Pa. Feb. 1, 2021), *report and recommendation*

---

[8]   In a Section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

*adopted*, 2021 WL 1193868 (M.D. Pa. Mar. 30, 2021) (assessing inmate's claim of exposure to contaminated water as a conditions of confinement claim).

The DOC Defendants argue that Davis's claim fails because the only injury he has alleged is "bald assertions that his health was at risk due to exposure to 'toxic coal ash,' the pleadings are devoid of any indication that this substance was in fact present," and "the grievance response reflects that '[t]here is no known toxic coal or any other toxic chemical coming from the ground of SCI Fayette." Defs' Br. at 16.

The allegations of the Amended Complaint state that Davis's diabetic condition is affected because of his exposure to coal ash and contaminated water. Am. Compl., ¶¶ 70-71. Accepting these allegations as true for purposes of the DOC Defendants' motion to dismiss, Davis has identified harm sufficient to state a claim. The Court recognizes that discovery may well reveal that Davis's allegations do not give rise to an Eighth Amendment claim, but at this stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Davis's favor. Although admittedly scant, the Court finds the allegations at this early stage of the litigation are sufficient to withstand a motion to dismiss

6.  *Thirteenth Amendment Claim*

While the Amended Complaint states that Davis has brought a Thirteenth Amendment claim, there are no factual averments in the Amended Complaint addressing a Thirteenth Amendment claim. The DOC Defendants ask that any Thirteenth Amendment claim be dismissed for failure to state a claim. Br. at p. 15. (ECF No. 23). Davis does not respond to this argument.

The Thirteenth Amendment to the U.S. Constitution provides that "[n]either slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S.

Const. amend. XIII, § 1. "The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (internal citations omitted). The Court of Appeals for the Third Circuit has further explained that the "prohibition against involuntary servitude has always barred forced labor through physical coercion." *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (3d Cir.1993) (abrogated on other grounds by *Troster v. Pennsylvania State Dep't Corrs.*, 65 F.3d 1086, 1090 (3d Cir.1995)). "Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." *Steirer*, 987 F.2d at 999.

The Amended Complaint is void of any allegations which state a plausible claim under the Thirteenth Amendment.  Leave to amend will be denied as futile.

### 7. *Fourteenth Amendment Equal Protection Claim*

Davis brings a Fourteenth Amendment equal protection class-of-one claim against the DOC Defendants.  The Equal Protection Clause of the Fourteenth Amendment guarantees all citizens "equal protection of the laws."  U.S. Const. amend. XIV § 1.  As a result, the Equal Protection Clause requires that all persons "similarly situated" be treated alike by state actors.  *See City of Cleburne v. Cleburn Living Ctr., Inc*., 473 U.S. 432, 439 (1985).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects'."  *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Under a class-of-one theory, "a plaintiff need not allege class-based discrimination." *Id.* at 765 (citing *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008); *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) ("[I]n 'class-of-one claims, 'the plaintiff [does] not allege membership in a class or group' but rather simply alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'." (quoting *Olech*, 528 U.S. at 564)). "In a class of one claim, a plaintiff must establish that: `(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment." *Aulisio v. Chiampi*, 765 F. App'x 760, 764-65 (3d Cir. 2019) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Aulisio*, 765 F. App'x at 765.

Here, the DOC Defendants seek dismissal of the equal protection claim arguing that Davis was not treated differently from others similarly situated as there was no juvenile lifer transfer policy. Rather, the DOC Defendants argue that Davis should have sought an incentive-based transfer to be returned to his home region pursuant to DOC policy 11.1.1, Section 2, "Transfer Petition System," "the same policies/procedures that the rest of the inmate population must utilize if they wish to see a transfer." Defs' Br. at p. 14 (ECF No. 23). The Court, however, finds that the Amended Complaint adequately alleges each of the three elements for a class-of-one claim, albeit at a minimum.

As for the first element, "[a]t the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of . . . similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011). While " '[p]ersons are similarly situated under the

Equal Protection Clause when they are alike in all relevant aspects,' " *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)), "the law in the Third Circuit does not require [the plaintiff] to show that the [comparators] are identical in all relevant respects but only that they are alike." *Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F. Supp. 2d 616, 628 (W.D.Pa. 2012) (citing *Startzell*, 533 F.3d at 203). "Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry." *Chan v. Cnty. of Lancaster*, No. 10–3424, 2011 WL 4478283, at *15 (E.D.Pa. Sept. 26, 2011) (citing *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004)). "For that reason, some courts in this Circuit have stated that 'a final determination of this issue is inappropriate at the motion-to-dismiss stage.' " *Thomas*, 2012 WL 3599415, at *5 (quoting *Chan*, 2011 WL 4478283, at *15). Here, Davis alleges that he is "similarly situated" to other juvenile lifers. At this early stage of the litigation, this is enough to meet the first element.

As for the second element, the Amended Complaint states DOC Defendants intentionally did not follow their policy/practice/procedure in refusing to return Davis to his home region; the DOC Defendants respond that no such policy/practice/ procedure existed. As note previously, whether DOC Defendants had a practice/procedure is clearly something that needs to be developed during discovery. For now, the Court will draw a reasonable inference at this pleading stage that there was a DOC policy/practice/procedure for returning juvenile lifers after resentencing to their home regions, and that the actions of the DOC Defendants in refusing to transfer Davis were intentional.

Finally, as for the third element, Davis pleads there was no rational basis for treating him differently than other juvenile lifers. In this case, Davis was informed there was no juvenile lifer

transfer policy.  He adamantly argues that such a policy/practice/procedure exists. This fundamental difference needs to be explored during the discovery phase.

The Court recognizes that discovery may well reveal that the alleged conduct of the DOC Defendants does not give rise to a class-of-one Equal Protection claim, but at this stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Davis's favor.  Accordingly, the motion to dismiss Davis's Fourteenth Amendment claim will be denied.

B.  Claims Brought Under 42 U.S.C. § 1985(3)

To state a claim under 42 U.S.C. § 1985(3),

a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), as amended (May 15, 1997) (emphasis added).

Davis alleges,

Defendant's Wetzel, Hammon, Armel, Erickson, and unknown Defendant's in Central Office and at the SCI Fayete violated 42 U.S.C. § 1985(3) by agreeing either expressly or impliedly to impose, perpetrate or fail to remedy the constitutional violations disclosed herein.

Am. Compl., ¶ 90.  The DOC Defendants argue that the allegations of the Amended Complaint "fall woefully short of establishing a claim." Defs' Br. at 15.  Davis does not respond to this argument.

The Court finds that Davis has pled no facts supporting a claim that the DOC Defendants' actions were motivated by class-based animus. Therefore, the motion to dismiss these claims will be granted.

**VI.     Leave to Amend**

The Court of Appeals for the Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). While aware of these holdings, the Court finds that allowing for amendment by Davis would be futile.

Davis filed his original complaint on February 9, 2023.  The DOC Defendants moved to dismiss the Complaint, which placed Davis on notice of the deficiencies in his Complaint.  In response, he filed an Amended Complaint on June 30, 2023, which did not correct the deficiencies. Further amendment would be futile as Davis has had the opportunity to revise his claims to add any missing averments, but has not done so.

**VII.    Conclusion**

For all these reasons, the DOC Defendants' motion to dismiss will be granted in part and denied in part as follows:

1.   The motion will be granted as to all claims brought under 42 U.S.C. § 1983 alleging violations of Davis's Fourth, Fifth, and Thirteenth Amendment rights;

2.   The motion will be granted as to all claims brought under 42 U.S.C. § 1985(3);  and

3.   The motion will be denied as to all claims brought under 42 U.S.C. § 1983 alleging violations of Davis's rights under the  (i) First Amendment (retaliation), (ii) Eighth Amendment

(conditions of confinement), and (iii) Fourteenth Amendment Equal Protection clause.

An appropriate Order follows.


February 7, 2024                                    s/Cynthia Reed Eddy
                                                   Cynthia Reed Eddy
                                                   United States Magistrate Judge


cc:    KEVIN DAVIS
       QQ-0944
       SCI FAYETTE
       50 Overlook Drive
       LaBelle, PA 15450
       (via United States First Class Mail)

       Kelly J. Hoke
       Office of General Counsel, Department of Corrections
       (via ECF electronic notification)